USDC- GREENBELT
'26 JUL 17 AM8:46

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MALAKI SANDERS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:25-cv-2628-LKG |
| OFFICER CHRISTOPHER STITLEY,[1] | ) Dated: July 16, 2026 |
| Defendant. | ) |

### MEMORANDUM OPINION

Self-represented plaintiff Malachi Sanders, a state inmate confined at the Maryland Correctional Training Center ("MCTC") at the time of the events complained of, filed this civil rights complaint pursuant to 42 U.S.C. § 1983, against Officer Christopher Stitley. ECF No. 1. Sanders seeks monetary damages for an incident that occurred on April 2, 2025, when he was in an altercation with Defendant Stitley. *Id.*

In response to the Complaint, Defendant filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 17. Sanders was advised of his right to file an opposition response to Defendant's motion and of the consequences for failing to do so. ECF No. 20. Sanders was granted additional time to file any opposition response (ECF No. 21), but has failed to file anything further. The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, Defendant's motion shall be **GRANTED**.

### I.    Background

In his unverified complaint, Sanders claims that on April 2, 2025, Officer Stitley punched him in the right side of his face, cracking his tooth, and would have pulled his hair out if another officer had not intervened. ECF No. 1 at 4. According to Sanders, at the time of the altercation he

---

[1] The Clerk shall amend the docket to reflect the full name of Defendant Stitley.

was handcuffed behind his back, sitting and having his vital signs checked. *Id.* Sanders states that he complied with all direct orders and did not stand up or threaten anyone. *Id.* He claims that he was not aggressive and that Stitley's actions were unwarranted and constituted an excessive use of force. *Id.* He seeks compensatory and punitive damages. *Id.* at 5.

In support of his Motion, Defendant provides the Use of Force and Intelligence and Investigative Division Incident reports prepared as a result of the altercation (ECF Nos. 18-1 and 18-2), relevant portions of Sanders' medical records (ECF No. 18-3), and Sanders' disciplinary hearing record relevant to the altercation (ECF No. 17-5).[2]

The record evidence demonstrates that on April 2, 2025, Defendant Stitley and another officer were called to escort Sanders, who was on staff alert, from the segregation unit to the medical unit for assessment after Sanders had reported to a Psychology Nurse that he was feeling suicidal. ECF No. 18-1 at 7-8, 12  While being transported to the medical unit, Sanders was in an agitated state and upon arrival in the medical unit was rude and disrespectful to staff. *Id.* at 7-8.  RN Laurent attempted to evaluate Sanders, but Sanders stated that he would not "sit down and be seen by this fucking medical staff" and "you will have to deal with me today." *Id.* at 7-8, 25.  Stitley directed Sanders to calm down and sit in the chair. *Id.* Sanders then lunged toward Laurent and Stitley moved to restrain Sanders by the shoulder, but ultimate grabbed his hair in an attempt to keep him from harming Laurent. *Id.* at 12.  Stitley then removed himself from the area and Sanders was escorted by other officers to an observation cell in the medical unit. *Id.* at 9-10.

Sanders was evaluated by medical staff, and no physical injuries were observed. ECF No. 18-1 at 40-41; ECF 18-2 at 13-17 (medical records). Sanders was referred for a dental evaluation and x-rays taken showed not fractures only existing decay on two teeth "which [had] nothing to do with the

---

[2] Defendant's motion to seal (ECF No. 19) the Use of Force Report (ECF No. 18-1), the Intelligence and Investigative Division Incident Report ( ECF No. 18-2) and medical records (ECF No. 18-3) is unopposed and, because the request appears reasonable and necessary, is granted.

incident." ECF 18-2 at 17. Photographs taken of Sanders shortly after the incident also showed no injuries. ECF 18-1 at 14, 48-49.

The incident was referred to the Department of Public Safety and Correctional Services' Intelligence and Investigative Division (IID") for review. ECF No. 18-1 at 3. The investigation included interviews with Sanders, Stitley and witnesses to the incident. *Id.* The IID found no evidence to corroborate Sanders' version of events and no evidence that Sanders was injured. ECF No. 18-1.

As a result of the incident, Sanders was charged with inmate rule infractions including violating Rules 100 (engaging in a disruptive act); 104 (making threat that included using physical harm to objects, property or individuals); and 410 (demonstrating disrespect, insolence or use of vulgar language). ECF No. 17-5 at 3-4. The rule violations were combined with other rule violations that Sanders received in March and April of that year. *Id.* at 6-14. Sanders waived his appearance at the disciplinary hearing and entered a guilty plea to four of the combined six charges, including violation of Rule 100 in connection with the April 2, 2025 altercation with Stitley. *Id.* at 15. Sanders was found guilty of the rule violation and sanctioned to 100 days of segregation, loss of 200 days credits, and loss of 60 days visitation. *Id.*

## II.    Standard of Review

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506,

3

513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

4

While self-represented pleadings are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

## III.   Analysis

Defendant asserts he is entitled to Eleventh Amendment immunity for claims asserted against him in his official capacity, the amount of force used was not excessive, Defendant is entitled to qualified immunity, and Sanders claims for mental or emotional damages are barred by the Prison Litigation Reform Act. ECF No. 17-1

### A.   Eleventh Amendment Immunity

Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from citizen suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-204(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Accordingly, Defendant

5

Stitley is immune from suit for actions taken in his official capacity and those claims must be dismissed.

### B.    Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

Here, the record reflects that while being escorted to the medical unit for evaluation Sanders, who was already on staff alert due to disruptive conduct, was belligerent and aggressive toward staff. Once in the unit he was non-cooperative and verbally abusive toward staff. Stitley observed Sanders lunge aggressively toward medical staff and in an effort to prevent an attack, Stitley grabbed Sanders by the shoulders, his hands slipped, and he ended up grabbing Sanders by the hair, pulling him back into the chair. Once restrained from attacking staff, Stitley left the medical unit. None of the witnesses observed Stitley punch Sanders as he alleged and Sanders had no objective injuries.

It is clear from the evidence that Stitley used force in order to gain control of the situation, protect the medical staff who appeared to be under attack from Sanders, and reestablish security over the situation. The amount of force used was only the amount necessary to prevent a perceived attack on staff and Sanders suffered no objective injury. In sum, it appears that the force used by the officer

6

was applied in a good faith effort to maintain and restore discipline and to protect other staff. The Eighth Amendment claim therefore fails and Defendant Stitley is entitled to summary judgment on this claim.

## IV.    Conclusion

By separate Order which follows, Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment shall be **GRANTED.**

July 16, 2026
Date

LYDIA KAY GRIGGSBY
United States District Judge

7